MOORE, Judge.
B.B.T. (“the father”) appeals from a judgment of the Houston Juvenile Court (“the juvenile court”) terminating his parental rights to K.T. (“the child”). We affirm the judgment.

Facts and Procedural History

The father has previously been before this court. See B.B.T. v. Houston Cnty. Dep’t of Human Res., 985 So.2d 479 (Ala.Civ.App.2007). In B.B.T., this court set forth the background of this case up to that point as follows:
“A.H. (‘the [child’s birth] mother’) gave birth to the child on February 20, 2002. The father, who was living with, but not married to, the [child’s birth] mother at the time, signed the birth certificate as the father. The couple subsequently ended their relationship; the [child’s birth] mother retained physical custody of the child. On June 3, 2003, the Houston County Department of Human Resources (‘DHR’) obtained custody of the child, along with three of the child’s half siblings. On October 21, 2005, DHR filed a petition to terminate the [child’s birth] mother’s parental rights to the child and to terminate the parental rights of, as DHR put it, the ‘unknown father’ of the child. On April 25, 2006, DHR obtained DNA test re- *171 suits indicating that B.B.T. was the biological father of the child. The father filed a petition to obtain custody of the child on August 3, 2006. After four ore tenus hearings occurring on November 21, 2006, December 18, 2006, February 1, 2007, and March 13, 2007, the juvenile court entered a judgment terminating the [child’s birth] mother’s and the father’s parental rights to the child. The father appealed], asserting that the evidence presented to the juvenile court was insufficient to support the termination of his parental rights.”
985 So.2d at 480 (footnote omitted). On appeal, this court held that the record did not contain clear and convincing evidence of the sole ground relied upon by the juvenile court in terminating the father’s parental rights. 985 So.2d at 483. Therefore, on November 30, 2007, this court reversed the judgment of the juvenile court terminating the father’s parental rights.[1] Id.
After a period during which the father and the Houston County Department of Human Resources (“DHR”) made efforts toward family reunification, the father regained custody of the child on September 3, 2008; however, DHR later regained custody of the child on August 6, 2009, apparently through a dependency proceeding. The child was then placed in foster care, where she has resided with the same married couple and their children ever since. S.G., the father’s employer, filed a petition to obtain custody of the child in September 2010. DHR filed a petition to terminate the father’s parental rights to the child on October 14, 2010. After a trial, the juvenile court entered a judgment on May 4, 2011, terminating the father’s parental rights. The father filed his notice of appeal on May 17, 2011.

Issues

On appeal, the father argues that the judgment terminating his parental rights should be reversed because (1) DHR did not present clear and convincing evidence of grounds for the termination, (2) DHR did not use reasonable efforts to reunite the father with the child, and (3) DHR did not explore all viable alternatives to termination.

Analysis

Section 12-15-319(a), Ala.Code 1975, provides, in pertinent part:
“If the juvenile court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents renders them unable to properly care for the child and that the conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents.”
Pursuant to that statute, a juvenile court has grounds to terminate parental rights if clear and convincing evidence shows that a parent is unable or unwilling to meet the basic parental responsibilities to provide the child food, clothing, shelter, health care, education, nurturing, and protection.
Section 12-15-319 lists a variety of factors a juvenile court must consider in determining whether a parent is unable or unwilling to discharge his or her parental responsibilities. The father points out that many of those statutory factors indicate that his parental rights should not have been terminated. The father is correct *172 because the record contains no evidence indicating that the father abandoned the child, see § 12-15-319(a)(l); that the father has a mental illness or mental deficiency, or alcohol or drug problems, see § 12-15-319(a)(2); that the father has ever maltreated the child, see § 12-15-319(a)(3); that the father has been convicted of a felony, see § 12-15-319(a)(4); that the father has committed any crime against children, see § 12-15-319(a)(5); that the child has ever received any unexplained injuries while in the father’s care, see § 12-15-319(a)(6); that the father’s parental rights to other children have been extinguished, see § 12-15-319(a)(8); that the father has ever failed to provide for the material needs of the child, see § 12-15-319(a)(9); or that the father has failed to maintain regular visits or consistent communication with the child, see § 12-15-319(a)(10) & (11).
Nevertheless, DHR presented evidence indicating that, after the father had regained custody of the child on September 3, 2008, he depended primarily on C.M., who was his wife at the time, to care for the child. The father worked a split-shift schedule that required him to work 6 days a week from 10:00 a.m. to 1:00 p.m. and from 4:00 p.m. to 9:00 or 10:00 p.m. C.M. left the father in March 2009, and, according to the testimony of Judy Clark, a DHR foster-care worker, on August 6, 2009, DHR regained custody of the child after discovering that the father had returned the child to the child’s birth mother, whose parental rights had been terminated because of her danger to the child.[2] DHR immediately placed the child in a foster-care home, where she was still residing at the time of the trial. The father has since become involved with T.P., a woman who has served prison time as a result of the death of one of her children and who has not been allowed to exercise custody over any of her other children. DHR advised the father that, in order to regain custody of the child, he would have to end his relationship with T.P. Although the father testified at trial that he would end that relationship, the father admitted that T.P. had lived with him for a long period after DHR had advised him to end the relationship.
Based on that evidence, the juvenile court reasonably could have been clearly convinced that the child would be in danger of maltreatment if returned to the custody of the father. See § 12-15-319(a)(3). The juvenile court also reasonably could have been clearly convinced that the father had failed to make any real effort to adjust his circumstances to meet the needs of the child in accordance with DHR’s reunification plan. See § 12-15-319(a)(12). More to the point, the totality of the evidence could have clearly convinced the juvenile court that the father, who denied that T.P. had done anything wrong to warrant imprisonment, would not and could not assure that the child would be protected at all times. The evidence thus supports the juvenile court’s finding that the father was unable or unwilling to discharge his responsibility to protect the child — one of the most basic parental responsibilities owed to the child.
The father maintains that DHR did not provide him any services to assist him in reuniting with the child. In considering whether grounds exist to terminate parental rights, a juvenile court shall consider “[tjhat reasonable efforts by the De *173 partment of Human Resources or licensed public or private child care agencies leading toward the rehabilitation of the parents have failed.” § 12 — 15—319(a)(7). The record indicates that DHR did, in fact, provide family-reunification services to the father in 2007 and 2008, during the period following the reversal of the judgment initially terminating his parental rights. Those efforts succeeded at first, allowing for the child to return to the home of the father; however, the juvenile court reasonably could have been clearly convinced from the evidence that, after C.M. left the family home, the father could not independently care for the child and that he attempted to return the child to the child’s birth mother. Thereafter, the presence of T.P. presented the primary barrier to family reunification, but the father refused to end his relationship with T.P. As Clark testified, DHR could not offer the father any service that would have led to his reunification with the child so long as he maintained that hazardous relationship. “Although ..., generally, DHR is to provide services that are aimed at reuniting the family, DHR is not required to offer services that appear unadvisable under the circumstances of the individual case or that would not lead to the reunification of the family.” K.C. v. Jefferson Cnty. Dep’t of Human Res., 54 So.3d 407, 414 (Ala.Civ.App.2010).
The father last argues that the juvenile court did not consider placing the child in the custody of S.G., his employer. See Ex parte Beasley, 564 So.2d 950 (Ala.1990) (requiring juvenile court to consider all viable alternatives before terminating parental rights). Ordinarily, when family reunification is not reasonably foreseeable, a parent cannot avoid a judgment terminating his or her parental rights on the sole basis that some fit person exists who has volunteered to assume custody of the child. A.E.T. v. Limestone Cnty. Dep’t of Human Res., 49 So.3d 1212 (Ala.Civ.App.2010). However,
“if, notwithstanding the unfitness of a parent, there remains a significant emotional bond between a child and an unfit parent, and it has been demonstrated that some alternative-placement resource would allow the child to visit periodically with the unfit parent so as to reap the benefit of partially preserving that relationship without incurring the harm of the child being raised on a day-to-day basis by an unfit parent, the court would be required to weigh the advantage of that arrangement against the advantage of termination and placement for adoption with permanent fit parents, and to decide which of these alternatives would be in the child’s best interest.”
D.M.P. v. State Dep’t of Human Res., 871 So.2d 77, 95 n. 17 (Ala.Civ.App.2003) (plurality opinion). Citing D.M.P., this court stated in T.D.K. v. L.A.W., 78 So.3d 1006, 1011 (Ala.Civ.App.2011):
“Our caselaw has recognized that removing the child from [an] abusive parent’s custody but allowing that parent restricted visitation rights can be a viable alternative to termination of parental rights when it appears that a wayward parent cannot be rehabilitated but still shares a deep and beneficial emotional relationship with his or her children.... In such cases, permanently depriving children of association with a parent by terminating parental rights could do more harm than good to the children.”
In this case, Clark testified that the child has a strong emotional attachment to the father. To avoid having the child testify at trial, the parties stipulated that the child, who did not know the nature of the termination proceedings, would testify that she loves the father. The evidence further *174 shows that the father has consistently visited with the child every two weeks for one hour and that the child enjoys those visits.
S.G. testified that she had long known the father and that she considered him to be a reliable employee and a good person. When she became aware that the father may permanently lose association with the child, she and her husband petitioned for custody of the child and began taking classes in order to qualify as foster parents for the child. She had completed most of those classes by the time of trial. S.G. testified that she had housed minor relatives and foreign exchange students in her home, but, she said, she had never planned on adopting a child. S.G. testified that she believed she could still provide a loving, spacious home for the child, with significant financial and cultural advantages. At the same time, S.G. testified that she would assure that the child maintained her association with the father, subject to any protective guidelines established by the juvenile court.
Against that evidence, the juvenile court heard testimony that S.G. had met the child only a few times and had spent a total of only five or six hours with the child by the time of trial.[3] In B.S. v. Cullman County Department of Human Resources, 865 So.2d 1188, 1196 (Ala.Civ.App.2003), this court cited the fact that a potential custodial resource had little to no relationship with the child in deciding that a juvenile court had not erred in finding that placement of the child with that potential custodian would not serve the best interests of the child. It is a question of fact whether a potential custodian is qualified to receive and care for a child. J.B. v. Cleburne Cnty. Dep’t of Human Res., 991 So.2d 273 (Ala.Civ.App.2008). Based on the evidence, the juvenile court reasonably could have determined that S.G. was not an appropriate person to assume custody of the child. Additionally, DHR presented evidence indicating that the child has a strong emotional attachment to her foster parents and that DHR would pursue adoption with the foster family in the event of a termination of the father’s parental rights. The juvenile court reasonably could have determined that the benefits of such a permanent custodial arrangement outweighed the advantages of placing the child with S.G.
For the foregoing reasons, the judgment of the juvenile court is affirmed.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.

. In a separate appeal, this court affirmed the juvenile court’s judgment terminating the child's birth mother's parental rights. See A.D.B.H. v. Houston Cnty. Dep’t of Human Res., 1 So.3d 53 (Ala.Civ.App.2008).

. The father denied that he took the child to live with the child’s birth mother, but it appears from the parties’ briefs to this court that DHR relied solely on that ground in obtaining a dependency judgment. That judgment has not been appealed, so we consider that factual issue to have been resolved adversely to the father.

. The record indicates that S.G. attempted to visit with the child but that DHR would not allow any visitation because its representatives maintained that S.G. would have no chance to obtain custody of the child. The father does not argue in his brief to this court that DHR acted inappropriately in denying S.G. contact with the child or that DHR was required to foster a relationship between S.G. and the child as part of its general duty to explore all viable alternatives to termination of parental rights.