DONALDSON, Judge.
T.D.I. (“the grandmother”) appeals from a judgment of the Jefferson Juvenile Court, Bessemer Division (“the juvenile court”), in which her petition for custody of A.M.P. (“the child”) was denied. We affirm.
*809 In September 2010, the mother of the child passed away. The mother and A.P. had lived together before her death but were never married. On January 5, 2011, A.P. filed a dependency petition in the juvenile court; that action was assigned case number JU-11-700018. In the petition, A.P. alleged that the child was dependent because her mother was deceased. He also claimed in the petition that he was the putative father of the child. He identified the grandmother as a person who “claim[ed] rights of legal custody of, physical custody of, or visitation with the child.” A.P., however, did not list an address for the grandmother in the petition, and the grandmother was not a party to that case.
Following a preliminary hearing, the juvenile court ordered A.P. to submit to a paternity test regarding the child and relieved the Department of Human Resources (“DHR”) of any supervisory responsibilities with respect to the child. The paternity test established that A.P. was not the child’s biological father. Nonetheless, on May 24, 2011, the juvenile court, noting that the mother was deceased and that the biological father was unknown, found the child to be dependent and awarded A.P. custody of the child. Although the juvenile court’s final order in case number JU-11-700013 did not award the grandmother visitation rights, presumably because she was not a party to the proceedings, the record reveals that the grandmother continued to have frequent visitation of the child following the entry of that judgment. There is nothing in the record to indicate that the juvenile court considered the grandmother or any other relative as a potential custodian of the child, and the record does not reveal any attempts by DHR or the juvenile court to provide the grandmother with notice of the custody award or of the paternity determination.
On January 12, 2012, the grandmother filed a separate dependency petition in the juvenile court; that action was assigned case number JU-12-700041. In her petition, the grandmother alleged that A.P., as the custodian of the child, had provided the child with inadequate care and that A.P. had abandoned the child by allowing his mother to be the primary caretaker for the child. The grandmother also requested custody of the child. A.P. filed an answer on February 1, 2012, in which he denied the grandmother’s allegations of dependency and opposed her request for custody.
The juvenile court commenced a trial on the matter on August 29, 2012. The trial was not completed that day and was continued to March 7, 2013. In the interim, a new juvenile-court judge was assigned to the case. At the portion of the trial conducted on March 7, 2013, the grandmother testified that she had had frequent visitation with the child since the mother’s death. She stated that she had not received notice of A.P.’s dependency petition, although she stated that she had been contacted by a DHR social worker inquiring about A.P. and had informed the social worker that A.P. had been a good father figure to the child. She testified, however, that that inquiry had occurred before she learned that A.P. was not the child’s biological father. She stated that A.P. changed after she found out that he was not the child’s biological father and after she told him that she intended to file a petition for custody. The grandmother testified that she had concerns with the living situation at A.P.’s home. Specifically, she stated that she had observed kerosene heaters being utilized in the home, which she feared could exacerbate the child’s respiratory condition. She testified, however, that she believed the child to be in good health. She also expressed concerns over the number of people living *810 in A.P’s home. She testified that she had been employed at the same place of business for 17 years and that she had the means to provide support for the child.
A.P. testified that he and the child had lived at his current residence for three years. He stated that he was employed and working the evening shift. He testified that he sent the child to day care and that his father and his cousin assisted with caring for the child while he worked. A.P. stated that the child is with the grandmother on most weekends. He stated that he took the child to doctor and dentist appointments. He testified that he had believed himself to be the biological father of the child at the time he filed his dependency petition and up until the paternity results showed that he was not the child’s biological father. He testified that he had been listed as the child’s father on the child’s birth certificate. He stated that he still considered the child to be his daughter and that he intended to continue to raise her.
The juvenile-court judge presiding over the March 7, 2013, portion of the trial received the testimony of Patrice Blanten, a DHR social worker, as an exhibit entered by the consent of the parties. Blan-ten’s testimony had been taken before the previous juvenile-court judge at the August 2012 portion of the trial. Blanten testified that she had performed a home evaluation on both A.P.’s and the grandmother’s residences and that neither residence was deficient. Blanten also stated that, due to criminal-background checks not having been conducted on the grandmother and A.P., she was unable to make a recommendation to the juvenile court concerning custody.
On March 15, 2013, the juvenile court entered a final judgment in case number JU-12-700041. In its judgment, the juvenile court stated, in pertinent part:
“[The matter] was called for trial on Petition to modify custody filed by [the grandmother].
[[Image here]]
“After an ore tenus trial consisting of sworn testimony, evidence and argument of counsel, the court finds that pursuant to Ex parte [McLendon, 455 So.2d 863 (Ala.1984),] the [grandmother] has not met the burden of proof to modify custody. Therefore the care [and] custody of [the child is] awarded to A.P., [the child’s] putative father.”
Also in its judgment, the juvenile court made reference to a statement made by the grandmother to a DHR social worker that had been included in a DHR report submitted in the dependency case initiated by A.P. The juvenile court stated that
“[t]he maternal grandmother gave a favorable report to ... Meoshia Abramsf, a DHR social worker], under JU-11-700013, ‘her daughter was engaged to [A.P.]. That contact with [A.P.] was every other day and face to face every weekend when she gets [the child]. She reported that he takes good care of [the child] and he doesn’t leave her on other people to care for her. She reported that her daughter never spoke ill of [A.P.] and she has no concerns with him getting full custody of [the child.’]”
The juvenile court also awarded the grandmother visitation rights with the child and entered a visitation schedule.
The grandmother filed a motion to alter, amend, or vacate the judgment or, in the alternative, for a new trial on March 28, 2013. In the motion, the grandmother contended that the juvenile court’s judgment was not supported by the evidence; that the judgment contained citations to the “evidence” that was not submitted at trial; that A.P. suppressed the fact that he was not the father of the child; that A.P. *811 failed to provide the court "with the grandmother’s address in his dependency petition; that the judgment was at odds with the stated policy of the State of Alabama favoring placement of a dependent child with a relative over a nonrelative; and that the grandmother was not a party to the previous dependency action. The grandmother requested a hearing in the motion. Although the record reveals that the juvenile court purported to set the motion for a hearing by an order dated April 15, 2013, the grandmother’s motion was denied by operation of law on April 12, 2013, pursuant to Rule 59.1, Ala. R. Civ. P., and Rule 1(B), Ala. R. Juv. P., without a hearing having been held. Thereafter, the grandmother filed a timely notice of appeal to this court.
It is evident from the judgment that the juvenile court treated the grandmother’s petition as one seeking a modification of custody. During the March 7, 2013, portion of the trial, counsel for both parties made statements that the standard announced in Ex parte McLendon, 455 So.2d 863 (Ala.1984), would apply in the present case. Although in her brief on appeal the grandmother sporadically refers to her petition as being one invoking the dependency jurisdiction of the juvenile court, we note that, in her postjudgment motion, the grandmother did not object to the juvenile court’s application of the McLendon standard to this case. She also does not explicitly raise the juvenile court’s application of the McLendon standard as an issue on appeal. As this court has previously noted:
“Once a juvenile court has placed a dependent child into the ‘permanent’ custody of a proper caregiver, the dependency of the child ends and any further change of custody is governed by the standards set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984). See Ex parte J.P., 641 So.2d 276, 278 (Ala.1994) (applying the McLendon standard in a custody dispute between two sets of relatives when one set of relatives had been awarded custody under a prior judicial order). Thus, the noncustodial relatives were required to meet the McLendon standard in order to be entitled to a modification of the custody of the children. As our supreme court reaffirmed in Ex parte Cleghorn, 993 So.2d 462, 466-67 (Ala.2008):
“ ‘In Ex parte McLendon, we held that the trial court cannot order a change of custody “ ‘unless [the party seeking the change of custody] can show that a change of the custody will materially promote [the] child’s welfare.’” 455 So.2d at 865 (quoting Greene v. Greene, 249 Ala. 155,157, 30 So.2d 444, 445 (1947)). We noted in Ex parte McLendon that “[i]t is important that [the party seeking the change in custody] show that the child’s interests are promoted by the change, i.e., that [the party seeking the change in custody] produce evidence to overcome the ‘inherently disruptive effect caused by uprooting the child.’ ” 455 So.2d at 866.’
“Our supreme court has also stressed that ‘[t]he McLendon standard is a “rule of repose,” meant to minimize disruptive changes of custody because this Court presumes that stability is inherently more beneficial to a child than disruption.’ Ex parte Cleghorn, 993 So.2d at 468. As noted above, the record contains evidence indicating that the children make good grades and are doing well in the custody of the custodians. Nothing in the record would support the conclusion that the children’s best interest would be served by modifying custody and removing the children from the home of the custodians. Accordingly, we affirm the juvenile court’s judgments *812 insofar as they denied the noncustodial relatives’ custody petitions.”
B.C. v. A.A., 143 So.3d 198, 206 (Ala.Civ. App.2013). We have also previously noted:
“[T]he McLendon standard does apply to a petition to modify an award of ‘permanent’ custody that was made pursuant to a finding that the child was dependent. See P.A. v. L.S., 78 So.3d 979, 981 (Ala.Civ.App.2011) (‘When a juvenile court has entered a judgment awarding custody of a'dependent child to a relative, a parent seeking to modify that custody must meet the McLendon standard in order to regain custody of the child.’).
“This court must construe the juvenile court’s judgment, if possible, in a manner that would uphold the validity of the judgment. See Ex parte Snider, 929 So.2d 447, 457 (Ala.2005) (quoting Clark v. Board of Dental Exam’rs of Georgia, 240 Ga. 289, 294, 240 S.E.2d 250, 254 (1977), quoting in turn Byrd v. Goodman, 195 Ga. 621, 621, 25 S.E.2d 34, 35 (1943) (Syllabus by the Court))(‘ “ ‘When a judgment is susceptible of two meanings, one of which would render it illegal and the other proper, that construction will, if reasonably possible, be given it that would render it legal.’ ” ’).”
M.W.H. v. R.W., 100 So.3d 603, 608-09 (Ala.Civ.App.2012). This is not to say that a juvenile court, after a dependent child has been placed into the “permanent” custody of a proper caregiver, is precluded from making a subsequent determination of dependency and award of custody if, upon proper petition of a party, that party satisfies its burden of proving that the circumstances surrounding a child have again rendered that child dependent and that it would be in the best interest of the child to award custody to the petitioner.
But in the present case the juvenile court correctly considered the grandmother’s petition as one seeking modification of the 2012 custody judgment entered in case number JU-11-700013 and correctly applied the McLendon standard. The juvenile court had made a previous determination of dependency and had placed the child in the permanent custody of A.P. without requiring DHR supervision. Although the grandmother made allegations in her petition that the child was dependent while in the custody of A.P., the juvenile court did not make a new finding of dependency. The record further indicates that the parties impliedly consented to treat the case as one'concerning custody modification, to which the McLendon standard would apply. See Rule 15(b), Ala. R. Civ. P. (“When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.”). See also, Rule 54(c), Ala. R. Civ. P. (“Except as to a party against whom a. judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party’s pleadings.”). Thus, the trial court properly determined that any determination as to a further change of custody would be governed by the McLendon standard.
On appeal, the grandmother first contends that the juvenile court erred by failing to give preference to the grandmother, a relative of the child, when making its custody determination. Section 12-15-314, Ala.Code 1975, states, in pertinent part:
*813 “(a) If a child is found to be dependent, the juvenile court may make any of the following orders of disposition to protect the welfare of the child:
[[Image here]]
“(3) Transfer legal custody to any of the following:
[[Image here]]
“c. A relative or other individual who, after study by the Department of Human Resources, is found by the juvenile court to be qualified to receive and care for the child. Unless the juvenile court finds it not in the best interests of the child, a willing, fit, and able relative shall have priority for placement or custody over a non-relative.”
The initial determination of dependency, however, was made in the dependency proceeding commenced by A.P. in case number JU-11-700013. As mentioned above, the current case was initiated by the grandmother and was treated by the parties and by the juvenile court as a petition for a modification of a prior custody order. The juvenile court made no new finding of dependency. Therefore, the relative-preference provision of § 12-15-314(a)(3)c. is inapplicable to the current proceeding.
The grandmother next contends that the evidence at trial did not support an award of custody to A.P. The grandmother relies on M.M. v. Colbert County Department Human Resources, 117 So.3d 376 (Ala.Civ. App.2013), for the proposition that she, as a relative of the child, should be entitled to custody under § 12-15-314(a)(3)c. over A.P., a nonrelative, because she has not been found to be unfit. M.M., however, involved a termination-of-parental-rights action in which the grandparent arguing for custody on a motion to intervene in the action was determined not to be “a viable alternative that would forestall termination of the parental rights of the mother,” thus negating application of the relative-preference provision of § 12-15-314(a)(3)c. M.M., 117 So.3d at 381. The present case is distinguishable because it involves a petition to modify a previous custody order to which the McLendon standard applies. The present case is not one in which the juvenile court determined the dependency of the child or where it addressed the termination of parental rights. Essentially, the grandmother is reasserting her argument that she should be eligible for relative preference, and she is stating that DHR had a burden to prove her unsuitability. Although it is true that the evidence in the record may not have supported a finding that the grandmother was an unsuitable relative resource, the issue before the juvenile court was one of modification of custody rather than a disposi-tional adjudication following the initial finding of dependency. The standard to be applied was the McLendon standard, and the juvenile court made a determination that the grandmother did not satisfy her burden of proof. Thus, the juvenile court correctly determined, based on the evidence, that custody should remain with A.P.
The grandmother also asserts that the juvenile court erred in denying her motion for new trial when the juvenile court’s final order was based on inadmissible evidence not presented at trial. Although the grandmother correctly notes that the DHR report submitted in the action initiated by A.P. was not admitted into evidence in this action, the grandmother did testify at trial that she had informed a DHR worker that A.P. had been a good father figure to the child. Thus, the excerpt of the DHR report that the juvenile court quoted in its judgment is cumulative of the grandmother’s testimony. Even if the juvenile court’s consideration of the grandmother’s statements *814 made in the report had constituted error, the error would have been harmless. See Homady Transp., LLC v. Fluellen, 116 So.3d 236, 243 (Ala.Civ.App.2012), citing Wood v. Hayes, 104 So.3d 863, 870 (Ala.2012), and Rule 45, Ala. R.App. P. The grandmother also asserts that a party requesting a hearing on a postjudgment motion is entitled to such a hearing pursuant to Rule 59, Ala. R. Civ. P.
“Rule 59(g), Ala. R. Civ. P., requires that a trial court conduct a hearing on a postjudgment motion if such a hearing is requested in that motion. Flagstar Enters., Inc. v. Foster, 779 So.2d 1220, 1221 (Ala.2000). The failure to conduct a requested hearing on a postjudgment motion is error. Id. However, any such error ‘is reversible error only if it “probably injuriously affected substantial rights of the parties.’” Kitchens v. Maye, 623 So.2d 1082, 1088 (Ala.1993) (quoting Greene v. Thompson, 554 So.2d 376, 380-81 (Ala.1989)). If the failure to conduct a hearing did not ‘ “injuriously affect[] [the] substantial rights of the parties,” ’ that failure, while error, was harmless. Id.
“ ‘ “Harmless error occurs, within the context of a Rule 59(g) motion, where there is either no probable merit in the grounds asserted in the motion, or where the appellate court resolves the issues presented therein, as a matter of law, adversely to the movant, by application of the same objective standard of review as that applied in the trial court.” ’
“Kitchens v. Maye, 623 So.2d at 1088-89 (quoting Greene v. Thompson, 554 So.2d at 381).”
DWOC, LLC v. TRX Alliance, Inc., 99 So.3d 1233, 1235-36 (Ala.Civ.App.2012). A review of the record in this case reveals that no prejudicial error occurred. We hold that, based on the evidence, there was no probable merit to the grounds raised in the motion. In her postjudgment motion, the grandmother essentially reasserted arguments that were presented in her casein-chief during trial. She also argued that the juvenile court improperly considered “evidence that was not submitted at trial.” As noted above, we have determined that the juvenile court’s reference to the DHR report was harmless error. Therefore, we conclude that the failure to conduct a hearing on the grandmother’s postjudgment motion was not prejudicial error.
For the foregoing reasons, we affirm the juvenile court’s judgment.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORÉ, JJ., concur.