Rel: November 15, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

————————————————

### CL-2024-0492

————————————————

## Ex parte T.M.

## PETITION FOR WRIT OF MANDAMUS

## (In re: In the matter of T.M., Jr.)

## (Jefferson Juvenile Court, Bessemer Division:  JU-23-569.01)

————————————————

### CL-2024-0493

————————————————

## Ex parte T.M.

## PETITION FOR WRIT OF MANDAMUS

## (In re: In the matter of Z.M.)

## (Jefferson Juvenile Court, Bessemer Division:  JU-24-164.01)

CL-2024-0492; CL-2024-0493; and CL-2024-0494

_____

**CL-2024-0494**
_____

**Ex parte T.M.**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: In the matter of K.M.)**

**(Jefferson Juvenile Court, Bessemer Division:  JU-24-165.01)**

PER CURIAM.

T.M. ("the father") has petitioned this court for writs of mandamus directing the Bessemer Division of the Jefferson Juvenile Court ("the juvenile court") to vacate its orders entered on March 25, 2024, and May 1, 2024.  We grant the petitions in part, deny the petitions in part, and issue the writs.

Procedural History

The materials before this court show that the Jefferson County Department of Human Resources ("DHR") initiated an investigation into allegations that the father had sexually abused Z.M., his eldest daughter, who was born on May 29, 2008.  On January 31, 2024, DHR instituted a safety plan, pursuant to which Z.M. and her two siblings, K.M., who was born on December 7, 2011, and T.M., Jr., who was born on April 7, 2007,

were placed into the home of S.L. ("the maternal aunt"). On February 7, 2024, DHR filed in the juvenile court three separate dependency petitions relating to Z.M., K.M., and T.M., Jr. ("the children"), respectively. In those petitions, DHR alleged that the mother of the children was deceased and that the children were in need of care and supervision due to the father's alleged sexual abuse of Z.M. On February 28, 2024, the juvenile court conducted a shelter-care hearing regarding the children, which the father attended. The father has not provided this court with the transcript of the shelter-care hearing.

Also on February 28, 2024, the juvenile court entered a shelter-care order in each of the three dependency actions, awarding the maternal aunt pendente lite custody of the children and precluding the father from having any contact with the children. In the shelter-care orders, the juvenile court directed the father to provide DHR with a copy of the children's medical-insurance card and the children's "clothing and personal property." The juvenile court further ordered the father not to remove any funds from the children's savings accounts. Lastly, the shelter-care orders provided that the "[Social Security] checks [the children] receive[] from their mother will follow the children and not

3

remain with the father" and that, "[i]f the father receives [the] March [Social Security] check[s,] [they] shall be given to [the maternal aunt]."

On March 15, 2024, the children's court-appointed guardian ad litem filed a "motion to compel" in each of the dependency actions, seeking to enforce the terms of the shelter-care orders. In the motions to compel, the guardian ad litem asserted that the father had failed to turn over the March 2024 Social Security checks to the maternal aunt and had refused to allow the maternal aunt and the children entry into the "family residence" to obtain the children's clothing and personal property, including their pets and "memorabilia of their deceased mother." The guardian ad litem attached to each motion to compel a memorandum from the maternal aunt requesting that the juvenile court enter an "emergency restraining order" against the father; the maternal aunt alleged that the father had refused to allow her and the children access to the family residence to obtain the children's personal property, that he had changed the locks on the doors, that it appeared that he was removing property from the family residence, that he had not turned over the February 2024 Social Security checks as allegedly ordered, and that

4

he had threatened to terminate any insurance policies covering the children.

The father asserts in his mandamus petitions that the juvenile court scheduled the motions to compel for a hearing to take place on March 25, 2024, but he has not provided this court with a copy of the notices that were issued scheduling that hearing. The hearing proceeded as scheduled, but the father has not provided this court with a transcript of the hearing. The father alleges that the juvenile court did not receive any evidence at the hearing but that it received only arguments of counsel. The juvenile court summarized the hearing in an order entered in each of the dependency actions on the same date. According to those orders, the father was represented by counsel at the hearing; the father's counsel made objections to the father's cellular telephone being submitted to the juvenile court as evidence and to the juvenile court's considering any request that the father turn over the February 2024 Social Security checks, which objections the juvenile court overruled; and the juvenile court received information indicating that T.M., Jr., was driving himself and his siblings to school every day.

The juvenile court's orders also provided, in pertinent part:

5

"1.     The father shall not dispose of or destroy any of the mother's property.

"2.     The father shall not change[] the locks to the home.

"3.     [T.M., Jr.,] shall continue to have the use of the motor vehicle to take himself and siblings to and from school ever[y] day.

"4.     [The maternal aunt] shall accompany [the children] to the home and the father shall not be present.

"5.     On April 2, 2024, after school[, the children] and [the maternal aunt] shall go to the father's residence and retrieve their personal care items.  Neither the father nor his current paramour shall be present.

"6.     [The children] are to remove only their items and those of their mother.

"7.     They have [an] hour and [a] half to retrieve their items. …

"8.     The father shall maintain [the children] on his health insurance.

"9.     The father is to return the $4,500.00 that he received on behalf of [the children] in February.  The money follows the children.  Father previously stated that money was direct deposit[ed] into their savings account.  Therefore, it should be available.

"10. If the father has not done so, please give [the maternal aunt] an insurance card."

(Capitalization, bold typeface, and underlining omitted.)

CL-2024-0492; CL-2024-0493; and CL-2024-0494

On April 4, 2024, the father filed motions to reconsider the March 25, 2024, orders, arguing, among other things, that his right to due process had been violated because he had not received notice that the hearing would address the removal of the mother's property from the family residence, the children's health or medical insurance, or the use of a motor vehicle and that the portion of the orders requiring him to turn over the February 2024 Social Security checks was void because the shelter-care orders had not required him to turn over those checks. The juvenile court conducted a hearing on the motions to reconsider on April 16, 2024. The father has not provided this court with a transcript of that hearing. On May 1, 2024, the juvenile court entered an order in each of the dependency actions denying the motions to reconsider and directing the father to turn over to the maternal aunt the February 2024 Social Security checks.

## Issue

On June 21, 2024, the father filed in this court petitions for the writ of mandamus relating to the three dependency actions. In substance, the father petitions this court to issue writs requiring the juvenile court to vacate the March 25, 2024, orders because he did not receive adequate

7

notice of the claims and issues to be litigated at the March 25, 2024, hearing.

Ordinarily, a petition for the writ of mandamus arising from a dependency action must be filed within 14 days of the entry of the challenged order. See Rule 21(a)(3), Ala. R. App. P., and Ex parte R.W., 41 So. 3d 800, 804 (Ala. Civ. App. 2009). However, when a petitioner challenges an order as being void because it was entered in a manner inconsistent with due process, the 14-day deadline does not apply. See Ex parte M.F.B., 228 So. 3d 460, 462 (Ala. Civ. App. 2017); see also Ex parte Murray, 267 So. 3d 328, 332 (Ala. Civ. App. 2018). In these mandamus petitions, the father essentially argues that the March 25, 2024, orders were entered in a manner inconsistent with due process, see generally Frahn v. Greyling Realization Corp., 239 Ala. 580, 583, 195 So. 758, 761 (1940) ("It is established by the decisions in this and in Federal jurisdictions that due process of law means notice, a hearing according to that notice, and a judgment entered in accordance with such notice and hearing."), so his petitions will be considered by this court.

Standard of Review

A petition for the writ of mandamus is the appropriate method for seeking review of an order that is alleged to be void for lack of due process. See Ex parte Bashinsky, 319 So. 3d 1240, 1253 (Ala. 2020). "[A] void court order is a complete nullity." Hodges v. Archer, 286 Ala. 457, 459, 241 So. 2d 324, 326 (1970). As a nullity, a void judgment has no effect and is subject to attack at any time. Id. "A void order is a complete nullity, and it is the duty of the court on application of an interested party to vacate the void order at any time subsequent to its rendition." Person v. Person, 236 So. 3d 90, 100 (Ala. Civ. App. 2017). If the March 25, 2024, orders are void, this court must take notice of that fact and issue writs of mandamus to the juvenile court directing it to vacate the orders.

Discussion

The father has failed to prove that the March 25, 2024, orders were entered in a manner inconsistent with due process. The father has not provided this court with the notices setting the March 25, 2024, hearing, which would apprise this court of the matters to be addressed at that hearing. See Rule 21(a)(1)(F), Ala. R. App. P. (providing, in pertinent part, that a petitioner must attach to a petition for the writ of mandamus

"[a]n appendix including copies of all parts of the record that are essential to understanding the matters set forth in the petition"). Assuming the juvenile court indicated in the notices scheduling the March 25, 2024, hearing that only the matters set forth in the guardian ad litem's motions to compel would be heard, those motions, which incorporated the maternal aunt's memorandum, included all the matters adjudicated in the March 25, 2024, orders, except for the use of the motor vehicle. The March 25, 2024, orders indicate that, during the March 25, 2024, hearing, the juvenile court received arguments regarding the use of the motor vehicle, without objection from the father's counsel; thus, the father waived any due-process violation regarding the juvenile court's consideration of that issue. See C.B. v. J.W., 325 So. 3d 829, 835 (Ala. Civ. App. 2020). The father has not provided this court with a transcript of the March 25, 2024, hearing that would allow us to conclude otherwise. Thus, we deny the petitions for the writ of mandamus insofar as the father seeks an order compelling the juvenile court to vacate the March 25, 2024, orders based on any alleged due-process violations.

We note, however, that, when there is an apparent issue of subject-matter jurisdiction, "our review … is not limited to grounds specifically

10

raised in a mandamus petition." Ex parte T.C., 63 So. 3d 627, 630 (Ala. Civ. App. 2010), superseded on other grounds by statute, as recognized in Ex parte F.T.G., 199 So. 3d 82, 86 (Ala. Civ. App. 2015). This court has a "duty to consider a lack of subject-matter jurisdiction ex mero motu." Id. In the main opinion in T.J. v. Calhoun County Department of Human Resources, 116 So. 3d 1168 (Ala. Civ. App. 2013), two members of this court agreed that juvenile courts, which are courts of limited, statutory jurisdiction, may dispose of property only in accordance with the authority expressly vested in juvenile courts by the Alabama Juvenile Justice Act ("the AJJA"), Ala. Code 1975, § 12-15-101 et seq.

Section 12-15-314(e), Ala. Code 1975, provides that "[w]hen a child is placed in the legal custody of the Department of Human Resources," the juvenile court must order the child's parent to provide child support if that parent has the resources to do so. Traditionally, child support includes items and services considered "necessaries" for the health and welfare of a child. See Ex parte University of S. Alabama, 541 So. 2d 535, 537 (Ala. 1989). "The determination of what are necessaries depends upon the facts and circumstances of each case," id., but the term generally refers to food, clothing, shelter, health care, and education. See M.M. v.

11

Colbert Cnty. Dep't of Hum. Res., 117 So. 3d 376, 381 (Ala. Civ. App. 2013) ("[T]his court has recognized that parents have the responsibility to properly provide their children adequate food, clothing, shelter, health care, education, nurturing, and protection."). Pursuant to that definition, the juvenile court had jurisdiction over the Social Security funds, the children's medical insurance, and their clothing, all of which were necessaries.

The materials before this court do not define what the juvenile court meant by "personal care" items, and we cannot assume that those items are necessaries.

> "'In exercising jurisdiction over juvenile cases, a juvenile court may validly render a judgment only as authorized by the AJJA.' J.R.C. [v. Mobile Cnty. Dep't of Hum. Res.], 342 So. 3d [580] at 583 [(Ala. Civ. App. 2021)]. Moreover, because a juvenile court is a statutory court of limited jurisdiction, see W.B.B. v. H.M.S., 141 So. 3d 1062, 1065 n.1 (Ala. Civ. App. 2013), we cannot assume its jurisdiction; instead, every fact essential to its jurisdiction must affirmatively appear of record."

H.A.A. v. B.J.J., 368 So. 3d 876, 882 (Ala. Civ. App. 2022). Therefore, we issue writs of mandamus directing the juvenile court to vacate that portion of the March 25, 2024, orders that purports to adjudicate the

dispute over the children's personal-care items, which was entered without subject-matter jurisdiction.

We also conclude that the juvenile court did not have the authority to order the father to maintain the personal property formerly belonging to the mother before she died and to allow the children to remove that property from the family residence, to order the father to refrain from changing the locks on the doors to his house, and to order the father to allow the children the use of his motor vehicle. The AJJA does not bestow upon juvenile courts any authority to enter orders controlling the disposition or use of such personal property, which are not necessaries. See T.J., supra.

## Conclusion

Based on the foregoing, we grant the petitions for a writ of mandamus, in part, and direct the juvenile court to vacate those provisions in the March 25, 2024, orders purporting to adjudicate the disputes over the personal property formerly belonging to the mother, the father's changing the locks on his house, the use of the father's motor vehicle, and the children's "personal care" items. We deny the petitions in all other respects.

13

CL-2024-0492; CL-2024-0493; and CL-2024-0494

CL-2024-0492 -- PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.

CL-2024-0493 -- PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.

CL-2024-0494 -- PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.

Moore, P.J., and Edwards, Hanson, and Fridy, JJ., concur.

Lewis, J., concurs in the result in part and dissents in part, with opinion.

LEWIS, Judge, concurring in the result in part and dissenting in part.

The main opinion grants the petitions for a writ of mandamus to the extent that "the March 25, 2024, orders purport[ed] to adjudicate the disputes over the personal property formerly belonging to the mother, the father's changing the locks on his house, the use of the father's motor vehicle, and the children's 'personal care' items." ___ So. 3d at ___. The main opinion otherwise denies the petitions. I respectfully dissent insofar as the main opinion grants the petitions with respect to the children's personal-care items. I otherwise concur in the result.

In T.J. v. Calhoun County Department of Human Resources, 116 So. 3d 1168 (Ala. Civ. App. 2013), two members of this court agreed that juvenile courts lack jurisdiction "to order the removal of personal property from the home of a parent." Id. at 1177. In a dissent authored by Presiding Judge Thompson, which was joined by Judge Thomas, Judge Thompson wrote that the juvenile court in that case had jurisdiction to allow T.J.'s children, who had been declared dependent, to take some of their personal property from T.J.'s home pursuant to § 12-15-314(a)(4), Ala. Code 1975, which grants juvenile courts the authority to "[m]ake any other order as the juvenile court in its discretion shall

15

deem to be for the welfare and best interests of the child" when a child is adjudicated dependent.

I agree with the dissent in T.J. that a juvenile court has the authority to allow dependent children who have been removed from their home to take their personal property for their use and enjoyment pursuant to § 12-15-314(a)(4). In this case, though, the children had not been adjudicated dependent. Therefore, § 12-15-314(a)(4) does not apply. However, § 12-15-314(e) provides that, "[w]hen a child is placed in the legal custody of the Department of Human Resources," the juvenile court must order the child's parent to pay child support if that parent has the resources to do so. Our supreme court has held that parents have the obligation to provide "necessaries" for their children. Ex parte University of S. Alabama, 541 So. 2d 535, 537 (Ala. 1989). "The determination of what are necessaries depends upon the facts and circumstances of each case." Id.

Here, T.M. did not provide this court with a transcript of the hearing wherein the motions to compel were argued. Therefore, I cannot conclude that, considering the facts and circumstances of these cases, the juvenile court exceeded its discretion in determining that the provision

16

of necessaries included the children's Social Security benefits, medical insurance, and personal-care items.

The main opinion concludes that the juvenile court has jurisdiction to order the father to provide the children their clothing but not their personal-care items. However, I see no basis for such a distinction in light of the juvenile court's authority to require a parent to support his or her child by providing "necessaries" for the child. § 12-15-314(e); see also In re S.A.B., 326 Or. App. 192, 196, 198, 531 P.3d 718, 721, 722 (2003) (holding that a juvenile court had the authority to require a father to transfer a child's emotional-support dog to the child considering that Or. Rev. Stat. § 419B.385 provides that " '[t]he court may order the parent or guardian to assist the court in any reasonable manner in providing appropriate education or counseling for the ward' " and considering "the State of Oregon's policy to 'safeguard and promote each child's right to safety, stability and well-being.' [Or. Rev. Stat. §] 419B.090(3)"). Holding that a juvenile court lacks jurisdiction to order a parent to provide his or her children with their personal-care items improperly limits the juvenile court's discretion to allow for the support of those children during a traumatic event in their lives. Under the main opinion's holding, a

17

juvenile court would be allowed to order a parent to provide a child's shirts and pants, but the juvenile court would not be permitted to order a parent to provide a child with such "necessaries" as his or her toothbrush, schoolbooks, teddy bear, or other items to aid in effecting normalcy and stability for the child. I would not strain the construction of the word "necessaries" to limit the discretion of a juvenile court that is tasked with acting in the best interests of a child.

I note that, in these cases, the juvenile court's orders went beyond allowing the children to remove their personal property by affecting a transfer of property previously owned by their deceased mother, ordering the father to allow the children to have the use of the father's car, and directing the father not to change the locks on the father's house. I agree with the main opinion that affecting a transfer of the father's car and the property of the deceased mother as well as limiting the father's right to change the locks on his house were outside the jurisdiction of the juvenile court.

Based on the foregoing, I would issue writs of mandamus to the juvenile court instructing it to vacate those provisions of its orders affecting a transfer of the property of the children's deceased mother,

ordering the father to allow the children to use the father's car, and directing the father not to change the locks on his house. I would deny the petitions in all other respects.